## Artco Corp. v. Allen Iron & Steel Co.

*William L. Huganir*, for plaintiff.

*Gilbert P. High*, for defendant.

FORREST, J., May 22, 1957.—In its complaint in equity plaintiff seeks injunctive relief against the violation of a covenant of noncompetition. Defendant's answer denies that it has violated such covenant.

## Issues Raised

Following the signing of the contract, has defendant (a) by contacting plaintiff's customers, including consulting engineers and agencies, solicited orders for products of a design similar to or copied from plaintiff's designs, or (b) sought to benefit from information derived from plaintiff where such benefit would be detrimental to plaintiff competitively, "pirated" and hired former employes of plaintiff, and using such personnel, manufactured products similar to those of plaintiff and to the competitive detriment of plaintiff?

## Findings of Fact

1. In March, 1954, John O. Stoddart, president of defendant corporation, spoke to Arthur C. Farley, president of plaintiff corporation, and solicited the business of performing fabrication processes for plaintiff in connection with plaintiff's business of supplying industrial storage racks. The negotiations continued from time to time. In the course thereof, Mr. Farley told Mr. Stoddart that he had started plaintiff's business from "scratch" and that he wanted protection for plaintiff if defendant were to manufacture pallet racks for plaintiff. Mr. Stoddart replied: "We have no interest in becoming your competition." He added that defendant had no sales force and would not compete with plaintiff by using or copying plaintiff's patterns, models or designs.

2. On November 10, 1954, defendant, Allen Iron and Steel Company, entered into a written contract with

plaintiff, Artco Corporation, whereby defendant agreed to manufacture industrial storage racks for plaintiff, according to plaintiff's designs, at specified prices. The contract provided, inter alia,

"6. Allen agrees that, for the period of this contract, and for two years thereafter while Artco is engaged in this type of business that it will not solicit orders for or sell any products of a design similar to or copied from Artco's designs which have been disclosed to Allen. It is the parties' intention that Allen should not benefit from information derived from Artco where such benefit would be detrimental to Artco competitively.

"7. The agreement may be terminated by either party by written notice . . . Notice must be given at least 120 days before termination and the agreement will terminate only when both parties have complied with all provisions of this agreement . . ."

3. Previous to the execution of the contract, Arthur C. Farley, president of plaintiff corporation, wrote to John O. Stoddart, president of defendant corporation requesting that there be incorporated into their agreement a provision that defendant "shall not manufacture products for, sell products to, or engage in a business which competes with (plaintiff) directly or indirectly while (defendant) is manufacturing (plaintiff's) products and for a period of five (5) years after the severance of business relations between the two said companies." Defendant declined to include such provision in the contract, for the reason that it was already engaged in the manufacture and sale of industrial storage racks, including pallet storage racks.

4. Defendant did fabricate and manufacture industrial storage racks for plaintiff in accordance with plaintiff's plans and specifications, under the provisions of the contract, until July 26, 1956, at which time plaintiff set up its own fabrication plant in Hatfield, Pa.

5. In one instance, with Mr. Farley's knowledge and consent, defendant solicited orders for racks designed by Artco, Paterson Parchment Paper Company being the one solicited. The sale was completed and shipped and plaintiff was credited with the business.

6. On December 9, 1955, Mr. Farley and Mr. Stoddart conferred. Mr. Stoddart told Mr. Farley that he desired to cancel the contract in its entirety, except for paragraph 6. On December 12, 1955, Mr. Stoddart wrote to Mr. Farley to "confirm our understanding in your office on Friday, December 9th, that the agreement dated November 10, 1954 . . . be regarded as terminated excepting for paragraph 6 . . ."

7. On January 4, 1956, Mr. Farley wrote to Mr. Stoddart acknowledging receipt of the letter of December 12, and suggesting a change in the "basic paragraph" to read as follows: "The Allen Iron & Steel Company *and for its successors* agrees . . ." etc., as in finding of fact no. 2. Sometime later Mr. Stoddart told Mr. Farley that defendant preferred not to change the wording of paragraph 6 of the original agreement.

8. Since December 9, 1955, defendant received and filled orders for industrial storage racks from persons or firms other than plaintiff, but neither solicited nor manufactured nor sold any products of a design similar to or copied from Artco's designs.

9. Francis J. Bell, an engineer, was employed by plaintiff between March 15, 1954, and December 1, 1955, in designing and production of plaintiff's products. Between December 12, 1955, and June 30, 1956, he was employed by Campbell Soup Company, although in April, 1956, at the request of Mr. Stoddart, he began doing part time work for defendant, and thereafter he became a fulltime employe for defendant. He has not used any of plaintiff's plans or drawings in his work for defendant.

10. Elizabeth C. Egenberg, a stenographer, was formerly employed by plaintiff. She resigned on May 18, 1956. She was employed by Radio Station WIBG between May 21, 1956, and August 17, 1956. On August 20, 1956, at the request of Mr. Stoddart, she went to work for defendant.

11. There is no evidence that defendant benefited from its employment of Mr. Bell or Miss Egenberg in a manner which was detrimental to plaintiff, nor that defendant in employing said persons acted unethically or with intent to damage plaintiff competitively.

12. Between November 10, 1954, and July 26, 1956, plaintiff obtained a substantial volume of business through Ballinger-Meserole Company, who are architects and engineers and, specifically, warehouse design and equipment consultants. More than one-half of the business awarded by plaintiff to defendant originated in "leads" obtained from Ballinger-Meserole. However, Ballinger-Meserole does not actually place any orders; their clients do that. Mr. Stoddart and Mr. Bell in October, 1956, visited the Ballinger-Meserole office in an effort to promote defendant's sales. Messers Stoddart and Bell were first introduced to Mr. Meserole by Mr. Farley.

13. Defendant published a brochure in which there was "a partial list of users of Allen *manufactured* pallet racks." (Italics supplied). The racks shown on the brochure were neither .designed by plaintiff nor copied from plaintiff's designs.

14. Defendant set up a booth at the Cleveland Industrial Equipment Exposition, and its representative solicited manufacturers' representatives, particularly representatives of Automatic Corporation, to sell racks made by defendant, which were competitive with, but not of a design similar to or copied from those of plaintiff.

15. Plaintiff's president, Mr. Farley, introduced defendant to Wilson Industrial Equipment Co., and to DeHuff & Hopkins, manufacturers' representatives. Later, defendant's president, Mr. Stoddart, sought to induce Wilson and DeHuff & Hopkins to represent defendant's company in the sale of racks which were competitive with, but not similar to or copied from, those of plaintiff.

16. Since November 10, 1954, defendant has not solicited orders for products of a design similar to, or copied from, plaintiff's designs, nor sold any products of a design similar to or copied from plaintiff's designs, except on orders given by plaintiff or approved by plaintiff.

17. On July 26, 1956, plaintiff established its own plant for fabrication of its products.

## Discussion

The prayer of plaintiff's complaint is that defendant be enjoined from "(a) soliciting orders directly or indirectly for products of a design similar to the products of the plaintiff; (b) soliciting orders directly or indirectly for products of a design copied from the designs of the plaintiff . . .; (c) . . . hiring . . . former employees of the plaintiff for the purpose of benefiting from information derived from the plaintiff . . .; (d) contacting the customers of the plaintiff corporation for the purpose of attempting to obtain from the plaintiff's said customers business which is available for the plaintiff; (e) circulating or submitting of any brochures representing that the defendant corporation manufactures or sells products similar to or copied from those of the plaintiff corporation."

The contract between the parties, as set forth in finding of fact no. 2, for a period until two years after termination of the contract, did specifically prohibit defendant from soliciting orders for or selling any

products of a design similar to or copied from Artco's designs which have been disclosed to Allen. However, there is no evidence that defendant violated these clauses of the contract. Plaintiff has not proven a single occurrence where defendant competed with it in the sale of racks or any products similar to or copied from Artco's designs. It is true that defendant gratuitously pointed out one instance where it made a sale of racks which might have been in violation of this clause of the contract under consideration, except that the sale was treated as if plaintiff had procured the order. Such transaction certainly was not in violation of the agreement. The president of defendant company evidently owes his introduction to Ballinger-Meserole Company, to Wilson Industrial Equipment Co., and to DeHuff & Hopkins to Mr. Farley, president of plaintiff corporation. However, there is no proof that, as a result thereof, defendant solicited or threatened to solicit any orders of plaintiff's customers or made any sales to them of any products of a design similar to or copied from Artco's designs. Therefore, an injunction prohibiting same should not be entered.

Paragraph 6 of the contract contains two sentences, and plaintiff contends that the second sentence is sufficiently broad to bar defendant from enjoying any competitive benefits resulting from the introductions made by the president of plaintiff to the president of defendant. Plaintiff evidently contends that the negotiations leading up to the contract should be considered in construing the contract; that, accordingly, the second sentence of paragraph 6 of the contract, should be construed liberally in plaintiff's favor so as to deprive defendant of the right to any competitive rights or profits to the detriment of plaintiff in cases where defendant's product was competitive but not of a design similar to or copied from plaintiff's designs, *provided* plaintiff merely made the original introduc-

tion of defendant, not to the purchasers, but to the engineers or manufacturers' representatives through whom the purchasers ultimately became acquainted with defendant.

"Where a written contract is ambiguous or conflicting, or its meaning is doubtful or obscure, parol evidence is admissible to clarify the ambiguity and to resolve the doubts, in order to ascertain and determine the intention of the parties": Foulke v. Miller, 381 Pa. 587, 593 (1955). In this case, however, there is nothing obscure, doubtful or ambiguous about the contract, "and being clear its interpretation is for the court" without reference to any prior negotiations: Barium Steel Corp. v. Wiley, 379 Pa. 38, 44 (1954).

The first sentence of paragraph 6 expresses the basic intention of the parties; the second sentence is merely explanatory of the purpose of the preceding sentence. Plaintiff has not asked for general relief and therefore, strictly speaking, it is unnecessary to decide whether plaintiff would be entitled to injunctive relief if it were shown that defendant, using information as to customers, sales agencies, etc., derived from Artco, had sold industrial storage racks of a design dissimilar to those of Artco but to Artco's competitive disadvantage and loss. However, we are of the opinion that the second sentence of paragraph 6 should be construed to mean that it is the parties' intention that Allen should not benefit from information derived from Artco's disclosure of any design, pattern or model to Allen. If the contract were construed otherwise, plaintiff would be able to stifle defendant's business by gratuitously furnishing defendant with all manner of information of competitive benefit, whether or not the same was obtainable from other sources.

It should be noted that this case is not one of the conventional covenant against competition. Defendant

made industrial storage racks previous to this contract, and plaintiff was aware of such fact. The reasonable construction of this contract is that it imposes no restriction on the maintenance and development of defendant's pre-existing industrial storage rack business other than the prohibition of copying or "pirating" of Artco's designs.

As stated at the outset of this discussion, plaintiff seeks an injunction forbidding defendant from hiring plaintiff's former employes for the purpose of benefiting from information derived from plaintiff. However, the proofs do not support the allegations; the evidence does not disclose that defendant has "pirated" plaintiff's employes. The uncontradicted evidence pertaining to Mr. Bell is that for six months after leaving plaintiff's employment he worked for Campbell Soup Company, and then came with defendant. Also, Miss Egenberg worked for Station WIBG for approximately three months between the time she quit working for plaintiff and took up employment with defendant. In addition, plaintiff failed to show that defendant, through such channels, expected to or did or might derive any information of benefit to defendant.

Finally, plaintiff seeks to enjoin defendant from circulating brochures representing that defendant manufactures or sells products of a design similar to or copied from Artco's designs. Defendant's president testified in detail and without contradiction that the racks shown on the brochures were not designed by Artco nor copied from Artco's designs.

### Conclusions of Law

1. Equity has jurisdiction.

2. The second sentence of paragraph 6 of the agreement should be construed to mean only that it is the parties' intention that defendant should not benefit from information derived from plaintiff's disclosure of any design, pattern or model to defendant.

180

3. Plaintiff is not entitled to injunctive relief.
4. The complaint should be dismissed.
5. Costs should be paid by plaintiff.

*Decree Nisi*

And now, May 22, 1957, the complaint is dismissed; costs to be paid by plaintiff.

The prothonotary shall give prompt notice hereof to the parties. If no exceptions to this adjudication are filed within 20 days after such notice, this decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree.